MICHAEL J. HEYMAN
United States Attorney

MAC CAILLE PETURSSON
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: mac.caille.petursson@usdoj.gov

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>  vs.<br><br>MICHAEL EDWARD GREGG and<br>VIKASH PANDEY,<br><br>        Defendants. | No.  3:25-cr-00054-SLG-MMS<br><br>COUNT 1:<br>CONSPIRACY TO COMMIT WIRE<br>FRAUD AND MAIL FRAUD<br>  Vio. of 18 U.S.C. § 1349<br><br>COUNT 2:<br>MONEY LAUNDERING CONSPIRACY<br>  Vio. of 18 U.S.C. § 1956(h)<br><br>COUNT 3:<br>INTERNATIONAL MONEY<br>LAUNDERING CONSPIRACY<br>  Vio. of 18 U.S.C. § 1956(h)<br><br>CRIMINAL FORFEITURE<br>ALLEGATION 1:<br>  18 U.S.C. § 981(a)(1)(C), 28 U.S.C.<br>§ 2461(c) and Fed. R. Crim. P. 32.2(a)<br><br>CRIMINAL FORFEITURE<br>ALLEGATION 2:<br>  18 U.S.C. § 981(a)(1)(A), 982(a)(1), and<br>28 U.S.C. § 2461(c) and Fed. R. Crim. P.<br>32.2(a) |

# INDICTMENT

The Grand Jury charges that:

## COUNT 1
### Conspiracy to Commit Wire Fraud and Mail Fraud

1.      Beginning on a date unknown, but no later than March 2016, and continuing until at least May 2025, within in the District of Alaska and elsewhere, the defendants, MICHAEL EDWARD GREGG, VIKASH PANDEY, and others known and unknown to the Grand Jury, combined, conspired, and agreed with each other to commit certain offenses defined under Title 18, United States Code, Chapter 63, namely: Wire Fraud, in violation of 18 U.S.C. § 1343, and Mail Fraud, in violation of 18 U.S.C. § 1341.

All in violation of 18 U.S.C. § 1349.

## OBJECT OF THE WIRE AND MAIL FRAUD CONSPIRACY

2.      The object of the Wire and Mail Fraud Conspiracy was to, knowingly and with intent to defraud, devise, execute, and attempt to execute a material scheme and artifice to defraud and obtain monies, funds, and assets from victims across the United States via wire fraud and mail fraud by means of materially false and fraudulent pretenses, representations, and promises; and to devise and execute through the use of the United States mails and wires in interstate commerce, a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

//

//

## THE MANNER AND MEANS OF THE WIRE AND MAIL FRAUD CONSPIRACY

3.     In furtherance of this conspiracy, and to accomplish its object, (the "Wire and Mail Fraud Scheme") the following manners and means were used, among others:

4.     MICHAEL EDWARD GREGG ("GREGG"), VIKASH PANDEY ("PANDEY"), and others would obtain money from victims they targeted across the country. They did this by pretending to be employees of Best Buy, Geek Squad, Norton, or similar businesses. They contacted primarily elderly and vulnerable individuals via email or pop-up messages online indicating a service issue with their computer's virus protection.

5.     While pretending to represent legitimate businesses, through the course of the Wire and Mail Fraud Scheme, members of the Wire and Mail Fraud Scheme offered refunds to the customers for disputed charges, typically $400-500. Then they falsely stated that they accidentally refunded $40,000-$50,000 and urgently needed the money back.

6.     Members of the conspiracy would then typically instruct the victims to return the funds by check, wire, cash, or Bitcoin. GREGG and Co-Conspirator-1 created various bank accounts and provided those account numbers to other co-conspirators for the transfers in furtherance of the conspiracy. Members of the conspiracy would often claim that the funds did not come through or make up some other reason why the victims should send additional money, sometimes hundreds of thousands of dollars.

7.     GREGG and others would receive money from victims via wire transfers or the mail and move proceeds of that wire fraud and mail fraud from the United States to countries abroad, including, but not limited to, India, Hong Kong, and Singapore.

8.    GREGG would receive a commission or percentage of that money, often three to twenty percent, for himself before transferring the rest to other Co-Conspirators, typically abroad.

9.    GREGG also converted funds to cryptocurrency.

10.    This Wire and Mail Fraud Scheme used multiple individuals, accounts, and businesses in the United States and abroad to move and conceal the proceeds of this fraud in furtherance of the conspiracy.

11.    GREGG and Co-Conspirator-1 utilized the following companies to receive and move this money to India, Hong Kong, Singapore, and elsewhere, and to keep some for themselves:

| Entity | Owner/Director | Created | Location |
|---|---|---|---|
| Suntech Services LLC | Michael Gregg | 3/29/2016 | Anchorage, AK |
| Cybersource, LLC | Michael Gregg & Nancy Kanitz | 7/14/2017 | Anchorage, AK |
| Sapphire Business Services | Michael Gregg | 10/10/2018 | Anchorage, AK |
| Michael Gregg | Michael Gregg | 10/17/2018 | Anchorage, AK |
| My Coin Secure | Michael E. Gregg | 9/16/2020 | Anchorage, AK |
| Cybersource | Nancy J Kanitz | 10/12/2022 | Anchorage, AK |
| Njk Contractors | Nancy Jo Kanitz | 5/8/2024 | Anchorage, AK |
| Mg It Suppliers | Michael Edward Gregg | 10/13/2024 | Anchorage, AK |
| Mcloud Services | Michael E Gregg | 2/27/2025 | Anchorage, AK |
| Avangate Trading (OPC) Private Limited | Vikash Pandey | 11/8/2013 | Kolkata, India |
| Webmaxters Technologies Private Limited | Vikash Pandey & DebJani Mitra | 9/29/2018 | Kolkata, India |

12.    GREGG and Pandey owned or controlled several businesses and corporations in furtherance of the Wire and Mail Fraud Scheme, including the ones listed in the accounts below. GREGG and Co-Conspirator-1 utilized accounts with financial institutions, in Alaska and elsewhere, all of which were insured by either the Federal Deposit Insurance Corporation or the National Credit Union Association at all relevant times. Throughout the Wire and Mail Fraud Scheme, financial institutions flagged GREGG's accounts, or accounts he had control over, and either closed the account or restricted their activity. GREGG continued to open new accounts each time. Financial accounts included, but are not limited to, the following accounts that were under GREGG's control at all relevant times:

| Name of Bank or Credit Union | Account Ending Number | Name on Account | Account Opened | Account Closed | Days Open |
|---|---|---|---|---|---|
| USAA | 1061 | Michael GREGG | 4/22/2011 | 11/22/2023 | 4,597 |
| Key Bank | 9210 | Michael GREGG | 12/17/2014 | 4/28/2016 | 498 |
| Wells Fargo | 8202 | Michael GREGG | 3/17/2016 | 4/18/2016 | 32 |
| Bank of America | 4634 | Michael GREGG | 3/28/2016 | 7/28/2016 | 122 |
| Wells Fargo | 5965 | SunTech Services | 3/31/2016 | 4/26/2016 | 26 |
| Bank of America | 2740 | SunTech Services | 4/4/2016 | 7/28/2016 | 115 |
| Wells Fargo | 5663 | CyberSource, LLC | 8/2/2017 | 10/12/2017 | 71 |
| Credit Union 1 | 1022 | CyberSource, LLC | 1/19/2018 | 10/2/2018 | 256 |
| Elavon, INC (US Bank) | 6087 | CyberSource, LLC | 5/10/2018 | 6/14/2018 | 35 |
| Alaska USA | 3920 | CyberSource, LLC | 5/26/2018 | 8/9/2019 | 440 |
| Northern Skies | 9809 | CyberSource, LLC | 6/22/2019 | 7/5/2019 | 13 |
| Alaska USA | 2725 | Sapphire Business Services | 7/8/2019 | 8/9/2019 | 32 |
| USAA | 1775 | Michael GREGG | 8/9/2020 | | - |

| | | | | | |
|---|---|---|---|---|---|
| Nium (CFSB) | 3825 | Michael GREGG | 1/16/2021 | 6/20/2024 | 1,251 |
| PenFed Credit Union | 5010 | Michael GREGG | 7/12/2022 | | - |
| PenFed Credit Union | 9022 | Michael GREGG | 7/12/2022 | | - |
| Discover | 7404 | Michael GREGG | 12/6/2023 | | - |
| Key Bank | 3783 | Michael GREGG | 3/7/2024 | 5/22/2024 | 76 |
| Crypto.com (CFSB) | 7756 | Michael GREGG | 3/13/2024 | | - |
| Northrim Bank | 8001 | CyberSource, LLC | 4/5/2024 | 5/21/2024 | 46 |
| NuVision | 5360 | My Coin Secure | 6/15/2024 | 10/9/2024 | 116 |
| NuVision | 5379 | My Coin Secure | 6/15/2024 | 10/9/2024 | 116 |
| NuVision | 5351 | Michael GREGG | 6/15/2024 | | - |
| Global Federal Credit Union | 4886 | MG IT | 10/18/2024 | | - |
| NuVision | 6390 | NJK Contractors | 12/26/2024 | | - |
| Global Federal Credit Union | 0003 | M Cloud Services | 2/27/2025 | | - |

13.     It was further part of the Wire and Mail Fraud Scheme that GREGG and others regularly had other co-conspirators call victims to corroborate the Wire and Mail Fraud Scheme's false and fraudulent pretenses and instruct them how to send money, via checks through the mail to a business entity under GREGG's control, via wire transfers to accounts under GREGG's control, and to meet other co-conspirators in person to deliver cash.

14.     GREGG and others in the conspiracy took actions to conceal and disguise the nature, source, ownership and control of the wire fraud and mail fraud proceeds. For example, in November or December 2023, a member of the conspiracy contacted Victim 10, a resident of Texas in her sixties, via a pop-up ad on her computer stating there was a security issue. A member of the conspiracy told Victim 10 that her accounts were compromised and directed her to wire money to solve the issue. Victim 10 spoke with a member of the conspiracy on the phone who instructed Victim 10 not to tell anyone what she was doing.  Victim 10 then sent two wires from her bank account. One of those wires

was sent by Victim 10 and received by GREGG on or about December 6, 2023, in the amount of $49,800 to GREGG's Pentagon Federal Credit Union account ending 5010. Two days later, on or about December 8, 2023, GREGG wired $46,500 to an account under his control at Community Federal Savings Bank.

15.     In May 2024, Victim 14 received an email from Norton Anti-Virus indicating she was charged $499.99. Victim 14 called a telephone number associated with Norton to dispute the charge and spoke with a member of the conspiracy who provided Victim 14 with a Google form for reimbursement. A member of the conspiracy told Victim 14 the form was filled out incorrectly and Victim 14 received $50,000. A member of the conspiracy instructed Victim 14 to send back $50,000 through a bitcoin ATM. A member of the conspiracy instructed Victim 14 on the phone as she deposited approximately $49,300 in U.S. currency at a bitcoin ATM. A member of the conspiracy told Victim 14 that only $700 was received and that Victim 14 would need to send more money. Victim 14 then delivered approximately $47,600 in U.S. currency to a member of the conspiracy in person in Michigan as instructed by a member of the conspiracy. Victim 14 told a member of the conspiracy that she was not comfortable meeting strangers or using bitcoin ATMs. Victim 14 was then given instructions to send cashier's checks to GREGG at his home address in Alaska, which is also his business address. Between June 2024 and November 2024, Victim 14 mailed over $2 million in checks to GREGG.

16.     On June 17, 2024, GREGG deposited the first cashier's check from Victim 14 in the amount of $47,600 to his NuVision business account ending in 5379 under the name of "My Coin Secure." Ultimately $46,000 from Victim 14's cashier check was deposited

to GREGG's Crypto.com account after a circuitous route.

17.    Co-Conspirator-1 is a United States national who owns or owned companies in Alaska with GREGG. At all times relevant, GREGG retained control over these accounts as a result of his relationship with Co-Conspirator-1.

18.    PANDEY is a foreign national who owned or owns companies abroad.

19.    Through the course of this approximately nine-year Wire and Mail Fraud scheme, GREGG, and others laundered over $4.5 million dollars from at least 28 different victims across the country through financial institutions across the country, including in Alaska.

<u>OVERT ACTS</u>

20.    The Wire and Mail Fraud Scheme was operated and carried out, in substance, as set forth in the allegations of this Indictment above.

21.    The allegations above are realleged and incorporated as if fully set forth in this count.

22.    In furtherance of the conspiracy and to affect its illegal object, GREGG, PANDEY, and others committed the following overt acts, among others, each of which constituted an execution and attempted execution of the fraudulent Wire and Mail Fraud Scheme:

**OA1**: Beginning on or about March 31, 2016, and continuing until on or about February 27, 2025, GREGG opened or caused the opening of bank accounts used in furtherance of the Wire and Mail Fraud Scheme.

**OA2**: Beginning on or about March 29, 2016, and continuing until on or about February 27, 2025, GREGG formed, licensed and created or caused the creation of businesses that he controlled in furtherance of the Wire and Mail Fraud Scheme.

**OA3**: On or about March 30, 2016, GREGG facilitated and received a $4,500 check from Victim 1 in New Jersey into an account under GREGG's control, namely: Wells Fargo account number ending in 8202, that he created and caused to be created, provided, and utilized in furtherance of the conspiracy. Other co-conspirators directed and instructed Victim 1 to mail the funds to GREGG. The money was transferred as a result of the materially false and fraudulent pretenses, representations, and promises made by members of the conspiracy regarding the Wire and Mail Fraud Scheme.

**OA4**: On or about August 21, 2017, GREGG facilitated and received a $39,169 wire transfer in Alaska from Victim 2 in Australia into an account under GREGG's control in the name of CyberSource LLC, namely: Wells Fargo account number ending in 5663, that he created and caused to be created, provided, and utilized in furtherance of the conspiracy. Other co-conspirators directed and instructed Victim 2 to wire the funds to GREGG at the account number he provided to other co-conspirators. The wired money was transferred as a result of the materially false and fraudulent pretenses, representations, and promises made by members of the conspiracy regarding the Wire and Mail Fraud Scheme.

**OA5**: On or about December 13, 2018, GREGG facilitated and received a $29,650 wire transfer in Alaska from Victim 3 in Indiana into an account under GREGG's control in the name of CyberSource LLC, namely: Credit Union 1 account number ending in 7083, that he created and caused to be created, provided, and utilized in furtherance of the conspiracy. Other co-conspirators directed and instructed Victim

3 to wire the funds to GREGG at the account number he provided to other co-conspirators. The wired money was transferred as a result of the materially false and fraudulent pretenses, representations, and promises made by members of the conspiracy regarding the Wire and Mail Fraud Scheme.

**OA6**: On or about April 1, 2019, GREGG facilitated and received a $39,950 wire transfer in Alaska from Victim 4 in Florida into an account under GREGG's control in the name of CyberSource LLC, namely: Credit Union 1 account number ending in 7083, that he created and caused to be created, provided, and utilized in furtherance of the conspiracy. Other co-conspirators directed and instructed Victim 4 to wire the funds to GREGG at the account number he provided to other co-conspirators. The wired money was transferred as a result of the materially false and fraudulent pretenses, representations, and promises made by members of the conspiracy regarding the Wire and Mail Fraud Scheme.

**OA7**: On or about April 2, 2019, GREGG facilitated and received a $18,900 wire transfer in Alaska from Victim 5 outside of Alaska into an account under GREGG's control and the control of Co-Conspirator-1, namely: USAA account number ending in 1061, that he created and caused to be created, provided, and utilized in furtherance of the conspiracy. Other co-conspirators directed and instructed Victim 5 to wire the funds to GREGG at the account number he provided to other co-conspirators. The wired money was transferred as a result of the materially false and fraudulent pretenses, representations, and promises made by members of the conspiracy regarding the Wire and Mail Fraud Scheme.

**OA8**: On or about August 10, 2021, GREGG facilitated and received a $19,980 wire transfer in Alaska from Victim 6 in Ontario, Canada into an account under GREGG's control, namely: United Services Automobile Association ("USAA") account number ending in 7759, that he created and caused to be created, provided, and utilized in furtherance of the conspiracy. Other co-conspirators directed and instructed Victim 6 to wire the funds to GREGG at the account number he provided to other co-conspirators. The wired money was transferred as a result of the materially false and fraudulent pretenses, representations, and promises made by members of the conspiracy regarding the Wire and Mail Fraud Scheme.

**OA9**: On or about August 4, 2023, GREGG facilitated and received a $10,000 wire transfer in Alaska from Victim 7 in California into an account under GREGG's control, namely: PenFed Credit Union account ending in 5010, that he created and caused to be created, provided, and utilized in furtherance of the conspiracy. Other co-conspirators directed and instructed Victim 7 to wire the funds to GREGG at the account number he provided to other co-conspirators. The wired money was transferred as a result of the materially false and fraudulent pretenses, representations, and promises made by members of the conspiracy regarding the Wire and Mail Fraud Scheme.

**OA10**: On or about October 16, 2023, GREGG facilitated and received a $40,400 wire transfer in Alaska from Victim 8 in New Jersey into an account under GREGG's control, namely: PenFed Credit Union account ending in 5010, that he created and caused to be created, provided, and utilized in furtherance of the

conspiracy. Other co-conspirators directed and instructed Victim 8 to wire the funds to GREGG at the account number he provided to other co-conspirators. The wired money was transferred as a result of the materially false and fraudulent pretenses, representations, and promises made by members of the conspiracy regarding the Wire and Mail Fraud Scheme.

**OA11**: On or about November 28, 2023, GREGG facilitated and received a $30,000 wire transfer in Alaska from Victim 9 in Pennsylvania into an account under GREGG's control, namely: PenFed Credit Union account ending in 9022, that he created and caused to be created, provided, and utilized in furtherance of the conspiracy. Other co-conspirators directed and instructed Victim 9 to wire the funds to GREGG at the account number he provided to other co-conspirators. The wired money was transferred as a result of the materially false and fraudulent pretenses, representations, and promises made by members of the conspiracy regarding the Wire and Mail Fraud Scheme.

**OA12**: On or about December 6, 2023, GREGG facilitated and received a $49,800 wire transfer in Alaska from Victim 10 in Texas into an account under GREGG's control, namely: PenFed Credit Union account ending in 5010, that he created and caused to be created, provided, and utilized in furtherance of the conspiracy. Other co-conspirators directed and instructed Victim 10 to wire the funds to GREGG at the account number he provided to other co-conspirators. The wired money was transferred as a result of the materially false and fraudulent pretenses,

representations, and promises made by members of the conspiracy regarding the Wire and Mail Fraud Scheme.

**OA13**: On or about February 20, 2024, GREGG facilitated and received a $49,100 wire transfer in Alaska from Victim 11 in Illinois into an account under GREGG's control, namely: PenFed Credit Union account ending in 5010, that he created and caused to be created, provided, and utilized in furtherance of the conspiracy. Other co-conspirators directed and instructed Victim 11 to wire the funds to GREGG at the account number he provided to other co-conspirators. The wired money was transferred as a result of the materially false and fraudulent pretenses, representations, and promises made by members of the conspiracy regarding the Wire and Mail Fraud Scheme.

**OA14**: On or about March 1, 2024, GREGG facilitated and received a $13,900 wire transfer in Alaska from Victim 12 in Wisconsin into an account under GREGG's control, namely: PenFed Credit Union account ending in 5010, that he created and caused to be created, provided, and utilized in furtherance of the conspiracy. Other co-conspirators directed and instructed Victim 12 to wire the funds to GREGG at the account number he provided to other co-conspirators. The wired money was transferred as a result of the materially false and fraudulent pretenses, representations, and promises made by members of the conspiracy regarding the Wire and Mail Fraud Scheme.

**OA15**: On or about August 15, 2024, GREGG facilitated and received a $197,688.96 check in the mail in Alaska from Victim 14 in Michigan. GREGG

caused the check to be deposited into an account under GREGG's control in the name of My Coin Secure, namely: NuVision account ending in 5379, that he created and caused to be created, provided, and utilized in furtherance of the conspiracy. Other co-conspirators directed and instructed Victim 14 to mail the check to GREGG at an address in Alaska that he provided to other co-conspirators. The check was mailed and deposited as a result of the materially false and fraudulent pretenses, representations, and promises made by members of the conspiracy regarding the Wire and Mail Fraud Scheme.

**OA16**: On or about September 6, 2024, GREGG facilitated and received a $244,035.47 check in the mail in Alaska from Victim 14 in Michigan. GREGG caused the check to be deposited into an account under GREGG's control in the name of My Coin Secure, namely: NuVision account ending in 5360, that he created and caused to be created, provided, and utilized in furtherance of the conspiracy. Other co-conspirators directed and instructed Victim 14 to mail the check to GREGG at an address in Alaska that he provided to other co-conspirators. The check was mailed and deposited as a result of the materially false and fraudulent pretenses, representations, and promises made by members of the conspiracy regarding the Wire and Mail Fraud Scheme.

**OA17**: On or about November 15, 2024, GREGG facilitated and received a $251,367.35 check in the mail in Alaska from Victim 14 in Michigan. GREGG caused the check to be deposited into an account under GREGG's control in the name of MG IT Suppliers, namely: Global Federal Credit Union account ending in

4886, that he created and caused to be created, provided, and utilized in furtherance of the conspiracy. Other co-conspirators directed and instructed Victim 14 to mail the check to GREGG at an address in Alaska that he provided to other co-conspirators. The check was mailed and deposited as a result of the materially false and fraudulent pretenses, representations, and promises made by members of the conspiracy regarding the Wire and Mail Fraud Scheme.

**OA18**: On or about February 4, 2025, GREGG facilitated and received a $41,000 wire transfer in Alaska from Victim 13 in Alabama into an account under GREGG's control in the name of NJK Contractors, namely: NuVision account ending in 6390, that he created and caused to be created, provided, and utilized in furtherance of the conspiracy. Other co-conspirators directed and instructed Victim 13 to wire the funds to GREGG at the account number he provided to other co-conspirators. The wired money was transferred as a result of the materially false and fraudulent pretenses, representations, and promises made by members of the conspiracy regarding the Wire and Mail Fraud Scheme.

**OA19**: On or about April 4, 2025, GREGG received three checks in the following amounts: $149,426.16, $160,786.89, and $189,786.95 in the mail in Alaska from Victim 15 in Texas. GREGG caused the checks to be deposited into an account under GREGG's control in the name of MCLOUD SERVICES namely: Global Federal Credit Union account ending in 0003, that he created and caused to be created, provided, and utilized in furtherance of the conspiracy. Other co-conspirators directed and instructed Victim 15 to mail the funds to GREGG at an

address in Alaska that GREGG provided to other co-conspirators. The checks were mailed and deposited as a result of the materially false and fraudulent pretenses, representations, and promises made by members of the conspiracy regarding the Wire and Mail Fraud Scheme.

<u>COUNT 2</u>
Money Laundering Conspiracy

23.    In furtherance of this conspiracy, and to accomplish its object, (the "Money Laundering Scheme"), the following manners and means were used, among others:

24.    The allegations above are realleged and incorporated as if fully set forth in this count.

25.    Beginning on a date unknown to the Grand Jury, but no later than on or about October 2023, and continuing through at least February 2025, within the District of Alaska and elsewhere, the defendants, MICHAEL EDWARD GREGG and VIKASH PANDEY, did willfully, knowingly and intentionally combine, conspire, confederate, and agree with other persons known and unknown to the Grand Jury to commit certain offense under 18 U.S.C. § 1956, to wit: to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, Conspiracy to Commit Wire Fraud and Mail Fraud, in violation of 18 U.S.C. § 1349, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial

transactions represented the proceeds of some form of unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

All of which is in violation of 18 U.S.C. § 1956(h).

## OBJECT OF THE MONEY LAUNDERING CONSPIRACY

26.     The object of the Money Laundering Conspiracy was to, knowingly and with intent to defraud, devise, execute, and attempt to execute a material scheme and artifice to defraud and obtain monies, funds, and assets from victims across the United States via wire fraud by means of materially false and fraudulent pretenses, representations, and promises; and to devise and execute through the use of the United States wires in interstate commerce, a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

## MANNER AND MEANS OF THE MONEY LAUNDERING CONSPIRACY

27.     GREGG utilized bank accounts under his control in Alaska and elsewhere to receive wire transfers from victims across the United States and abroad constituting proceeds of wire and mail fraud. GREGG then took a commission or percentage of that money, often three to twenty percent, for himself before moving the remainder of the proceeds to other known and unknown co-conspirators.

28.     GREGG and others in the conspiracy took actions to conceal and disguise the nature, source, ownership and control of the wire fraud, mail fraud, and money laundering proceeds as described in the paragraphs contained above in this Indictment.

//

//

29.     The Money Laundering Scheme was operated and carried out, in substance, as set forth in the allegations of this Indictment above.

30.     The allegations above are realleged and incorporated as if fully set forth in this count.

31.     In furtherance of the Money Laundering Conspiracy and to affect its illegal object, GREGG, PANDEY, and others committed the following overt acts, among others, each of which constituted an execution and attempted execution of the fraudulent Money Laundering Scheme:

**OA1**: On or about October 16, 2023, GREGG received a wire from Victim 8 in the amount of $40,400 into an account GREGG created and caused to be created and controlled in furtherance of the Money Laundering Scheme, namely: PenFed Credit Union account ending in 5010. Approximately two days later, on October 18, 2023, GREGG wired out $36,000 of those funds to another entity utilized in the Money Laundering Scheme, namely: Bank of America ending in 0878. Other co-conspirators directed Victim 8 to wire the funds to GREGG into an account GREGG provided to other co-conspirators in furtherance of the Money Laundering Scheme. The wired money was transferred as a result of the fraudulent promises made by members of the conspiracy regarding the Money Laundering Scheme. GREGG then kept a commission from that transfer of approximately $4,400 for himself.

**OA2**: On or about December 6, 2023, GREGG received a wire from Victim 10 in the amount of $49,800 into an account GREGG created and caused to be created

and controlled in furtherance of the Money Laundering Scheme, namely: PenFed Credit Union account ending in 5010. Approximately two days later, on December 8, 2023, GREGG wired out $46,500 of those funds to another account under GREGG's control, namely: CFSB account ending in 3825. Other co-conspirators directed Victim 10 to wire the funds to GREGG into an account GREGG provided to other co-conspirators in furtherance of the Money Laundering Scheme. The wired money was transferred as a result of the fraudulent promises made by members of the conspiracy regarding the Scheme. GREGG then kept a commission from that transfer of approximately $3,300 for himself.

**OA3**: On or about February 4, 2025, GREGG received a wire from Victim 13 in the amount of $41,000 into an account GREGG created and caused to be created and controlled in furtherance of the Money Laundering Scheme, namely: NuVision account ending in 6390. Approximately one day later, on February 6, 2025, GREGG wired out $39,000 of those funds to another entity utilized in the Money Laundering Scheme, namely: Citi account ending in 1872. Other co-conspirators directed Victim 13 to wire the funds to GREGG into an account GREGG provided to other co-conspirators in furtherance of the Money Laundering Scheme. The wired money was transferred as a result of the fraudulent promises made by members of the conspiracy regarding the Money Laundering Scheme. GREGG then kept a commission from that transfer of approximately $2,000 for himself.

//

//

## COUNT 3
### International Money Laundering Conspiracy

32.    In furtherance of this conspiracy, and to accomplish its object, (the "International Money Laundering Scheme"), the following manners and means were used, among others:

33.    The allegations above are realleged and incorporated as if fully set forth in this count.

34.    Beginning on a date unknown to the Grand Jury, but no later than on or about March 2016, and continuing until at least April 2025, within the District of Alaska and elsewhere, the defendants, MICHAEL EDWARD GREGG and VIKASH PANDEY, did willfully, knowingly and intentionally combine, conspire, confederate, and agree with other persons known and unknown to the Grand Jury to commit certain offense under 18 U.S.C. § 1956, to wit: to knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer, monetary instruments and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, to wit, Conspiracy to Commit Wire Fraud and Mail Fraud, in violation of § 1349, knowing that the transportation and transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity in violation of 18 U.S.C. § 1956(a)(2)(B).

All in violation of 18 U.S.C. § 1956(h)

<u>OBJECT OF THE INTERNATIONAL MONEY LAUNDERING CONSPIRACY</u>

35.    The object of the International Money Laundering Conspiracy was to, knowingly and with intent to defraud, devise, execute, and attempt to execute a material scheme and artifice to defraud and obtain monies, funds, and assets from victims across the United States via wire fraud by means of materially false and fraudulent pretenses, representations, and promises; and to devise and execute through the use of the United States and foreign wires in interstate commerce, a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

<u>MANNER AND MEANS OF THE INTERNATIONAL MONEY LAUNDERING CONSPIRACY</u>

36.    GREGG utilized bank accounts under his control in Alaska and elsewhere to receive wire transfers from victims across the United States and abroad proceeds of wire fraud and mail fraud. GREGG then took a commission or percentage of that money, often three to twenty percent, for himself before moving the remainder of the proceeds to other unknown co-conspirators, including PANDEY, in countries including, but not limited to, India, Singapore, and Hong Kong.

37.    GREGG utilized bank accounts under his control in Alaska and elsewhere to receive wire transfers from victims across the United States constituting proceeds of wire and mail fraud. GREGG then took a commission or percentage of that money, often three to twenty percent, for himself before moving the remainder of the proceeds to other unknown co-conspirators.

38.     GREGG and others in the conspiracy took actions to conceal and disguise the nature, source, ownership and control of the wire fraud, mail fraud, and money laundering proceeds as described in the paragraphs above of the Indictment.

OVER ACTS

39.     The International Money Laundering Scheme was operated and carried out, in substance, as set forth in the allegations of this Indictment above.

40.     The allegations above are realleged and incorporated as if fully set forth in this count.

41.     In furtherance of the International Money Laundering Conspiracy and to affect its illegal object, GREGG, PANDEY, and others committed the following overt acts, among others, each of which constituted an execution and attempted execution of the fraudulent International Money Laundering Scheme:

**OA1**: On or about March 30, 2016, GREGG deposited a check from Victim 1 in the amount of $4,500 into an account GREGG created and caused to be created and controlled in furtherance of the International Money Laundering Scheme ending in 5965. Approximately one week later, GREGG transferred funds from account 8202 to account 5965.  GREGG then wired out $22,605 of those funds to an account outside of the United States under the control of PANDEY. The wired money was transferred as a result of the fraudulent promises made by members of the conspiracy regarding the International Money Laundering Scheme.

**OA2**: On or about August 21, 2017, GREGG received a wire from Victim 2 in the amount of $39,169.60 into an account GREGG created and caused to be created and

controlled in furtherance of the International Money Laundering Scheme, Wells Fargo account ending in 5663. Approximately three days later, on or about August 24, 2017, GREGG wired out $35,252 of those funds to an account outside of the United States under the control of PANDEY. Other co-conspirators directed Victim 2 to wire the funds to GREGG into an account GREGG provided to other co-conspirators in furtherance of the International Money Laundering Scheme. The wired money was transferred as a result of the fraudulent promises made by members of the conspiracy regarding the International Money Laundering Scheme. GREGG then kept a commission from that transfer of approximately $3,917 for himself.

**OA3**: On or about December 13, 2018, GREGG received a wire from Victim 3 in the amount of $29,650 into an account GREGG created and caused to be created and controlled in furtherance of the International Money Laundering Scheme, Credit Union 1 account ending in 7083. In the next five days, $26,600 of those funds would be withdrawn and transferred between Credit Union 1, Alaska USA, and USAA. On December 18, 2018, GREGG wired $26,600 to an account outside of the United States under the control of PANDEY. Other co-conspirators directed Victim 3 to wire the funds to GREGG into an account GREGG provided to other co-conspirators in furtherance of the International Money Laundering Scheme. The wired money was transferred as a result of the fraudulent promises made by members of the conspiracy regarding the International Money Laundering Scheme.

GREGG then kept a commission from that transfer of approximately $3,050 for himself.

**OA4**: On or about April 2, 2019, GREGG received a wire from Victim 5 in the amount of $18,900 into an account GREGG created and caused to be created and controlled in furtherance of the International Money Laundering Scheme, USAA account ending in 1061. On the same day, on or about April 3, 2019, GREGG wired out $16,700 of those funds to an account outside of the United States under the control of PANDEY. Other co-conspirators directed Victim 5 to wire the funds to GREGG into an account GREGG provided to other co-conspirators in furtherance of the International Money Laundering Scheme. The wired money was transferred as a result of the fraudulent promises made by members of the conspiracy regarding the International Money Laundering Scheme. GREGG then kept a commission from that transfer of approximately $2,200 for himself.

**OA5-11**: GREGG made the following international wire transfers at the direction of PANDEY from accounts under GREGG's control that were funded by cashier's checks mailed to his Alaskan address from Victims 14 and 15 into co-conspirators accounts, including PANDEY's:

//

//

//

//

//

| No. | Wire Date | Deposit | Beneficiary |
|-----|-----------|---------|-------------|
| 5 | 8/30/2024 | 100,000.00 | Avangate Trading |
| 6 | 9/3/2024 | 97,361.00 | Avangate Trading |
| 7 | 9/9/2024 | 64,790.00 | Avangate Trading |
| 8 | 9/18/2024 | 100,000.00 | Avangate Trading |
| 9 | 3/27/2025 | 109,890.00 | Hong Kong Ocean Star Logistics |
| 10 | 4/2/2025 | 51,900.00 | Avangate Trading |
| 11 | 4/2/2025 | 270,000.00 | Mega Star Impex Ltd |
| | | $ 793,941.00 | |

## CRIMINAL FORFEITURE ALLEGATION 1

The allegations contained in Count 1 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Upon conviction of the conspiracy to commit wire and mail fraud offenses alleged in Count 1 of this Indictment, the defendants, MICHAEL EDWARD GREGG and VIKASH PANDEY, shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, including but not limited to a money judgment for a sum of money equal to the value of the property subject to forfeiture; the property subject to forfeiture includes, but is not limited to:

- Approximately $125,050 in U.S. currency seized from NuVision account ending in 6407;

- Approximately $34,832.38 in U.S. currency seized from Global Federal Credit Union account ending in 4886;

- Approximately $60,000 in U.S. currency seized from Global Federal Credit Union

account ending in 0003;

- Approximately $49,100 U.S. currency seized from PenFed Credit Union account ending in 0922.

All pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

<u>CRIMINAL FORFEITURE ALLEGATION 2</u>

The allegations contained in Counts 2 and 3 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), 982(a)(1) and 28 U.S.C. § 2461(c).

Upon conviction of any of the offenses in violation of 18 U.S.C. § 1956(h) as set forth in Counts 2 and 3 of this Indictment, the defendants, MICHAEL EDWARD GREGG and VIKASH PANDEY, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(A) and 982(a)(1) any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956(h), or any property traceable to such property, including but not limited to a forfeiture money judgment equal to the value of the property.

All pursuant to 18 U.S.C. § 981(a)(1)(A), 982(a)(1), 28 U.S.C. § 2461(c), and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

If any of the property described above in Criminal Forfeiture Allegations 1 and 2, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of other property of the defendant pursuant to 21 U.S.C. § 853(p).

A TRUE BILL.

s/ Grand Jury Foreperson
GRAND JURY FOREPERSON


s/ Mac Caille Petursson
MAC CAILLE PETURSSON
Assistant U.S. Attorney
United States of America


s/ Michael J. Heyman
MICHAEL J. HEYMAN
United States Attorney
United States of America


DATE:  August 19, 2025